514 P.2d 1028

**The STATE of Arizona, Appellee,**

**v.**

**Angel Valenzuela DIAZ, Appellant.**

**No. 2537.**

Supreme Court of Arizona,
In Banc.

Oct. 12, 1973.

Gary K. Nelson, Atty. Gen., by William J. Schafer, III, and Ronald Crismon, Asst. Attys. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender, by Richard L. Thompson, Deputy Public Defender, Phoenix, for appellant.

CAMERON, Vice Chief Justice.

This is an appeal from a verdict and judgment of guilt to the crime of possession of narcotic drugs for sale, to wit, heroin, § 36–1002.01 A.R.S., and a sentence thereon of not less than six nor more than ten years in the Arizona State Prison.

We are asked to answer the following questions on appeal:

1. Was the testimony that known narcotics users were seen at and about a hotel room occupied by the defendant inadmissible and prejudicial?

2. Did the trial court comment on the evidence in his instructions to the jury?

3. Did the trial court fail to instruct the jury on a necessary material element of the crime?

The facts necessary for a determination of this matter on appeal are as follows. Acting upon information provided by a confidential informant that the defendant Diaz was selling narcotics from Room 129 of the Patio Hotel in Phoenix, Arizona, two officers of the Phoenix Police Department obtained the room across the hall from the defendant, Room 130, and observed the activities of the defendant and the people who visited him. After observing the activities for a period of time, the officers obtained a search warrant and when the defendant returned, the search warrant was executed. The officers found thirteen "papers" of heroin in the defendant's left front pants pocket and fifty-six more "papers" of heroin were found in a dirty pair of trousers in his room. After a jury trial at which time the defendant did not take the stand or present any evidence, the jury returned a verdict of guilty to the crime of possession of narcotics for sale from which verdict, judgment, and sentence of six to ten years defendant appeals.

## EVIDENCE OF KNOWN NARCOTICS USERS

Defendant was under surveillance for two days, 1 and 2 December 1971, and both officers testified that while observing the defendant they saw him entering and leaving the room, locking it, and at times cleaning and sweeping the room. They testified they did not observe any other persons using the room for longer than fifteen minutes. Officer Gonzales was able to testify as to one of the known narcotics users:

"Q Now, did you see Mr. Diaz engage in the sale of heroin on either the first or the second day of December, Officer Gonzales?

"A No sir, I did not.

"Q Do I understand you to testify that a person you knew to be a narcotics user went to Room 129 on the second day of December?

"A Yes, sir.

"Q Did that person enter Room 129?

"A Yes, sir.

"Q Approximately what period of time was the person in that room?

"A Approximately five minutes, 15 minutes.

"Q And your past involvement with this particular subject led you to the conclusion that he was in fact a user; is that correct?

"A Yes, sir.

"Q On what date had you had your last contact with this particular individual, prior to seeing him enter that hotel room?

"A Be awhile since I looked at my report on that person, but I believe it was November 28th of 1971.

"Q And did that contact involve narcotics in some manner?

"A Yes, sir.

*   *   *   *   *   *

"Q And as a result of that arrest on the 28th, were your suspicions comfirmed (sic); was that subject in possession of heroin?

"A Yes.

"Q And you then saw the subject three and a half days later in the Patio Hotel entering Room 129; is that correct?

"A Yes.

*   *   *   *   *   *

"Q As far as persons that you'd had personal contact with, did you have any first-hand knowledge about being users; is he the only subject?

"A No, sir.

"Q There are other persons that you knew to be narcotics users who entered that room?

"A In my own mind, yes.

"Q Well, I'm referring to first-hand knowledge, Officer. I'm referring to something conrete (sic) that you could hang this suspicion on.

"A Only by what was told to me by that person is what I base my conclusion on.

"Q By which person, the unnamed informant?

"A No, sir, by the person that went into the room.

"Q By this known narcotics user who went into the room?

"A Yes, sir."

The other officer, Officer Lucas, testified in a hearing out of the presence of the jury as follows:

"Q The question before you, Officer Lucas, is how many persons you saw come to and/or leave Room 129 on the 2nd of December?

"A Approximately five.

"Q And out of those five persons, how many do you believe, as a result of personal knowledge to be narcotics users?

"A One that I know for myself.

\* \* \* \* \* \*

"Q And what's the basis for your belief that this man is in fact a narcotics user?

"A From talking to the man, him personally admitting to me that he's a heroin addict, check of our police records on the man, stopping him and checking his arms and hands. He has quite extensive needle scars on both hands and both arms.

\* \* \* \* \* \*

"Q Are you able to determine from looking at these scars how fresh they were?

"A Well, in November when I stopped him, the blood had just coagulated on this portion of his wrist and hand, at this time he advised me that—I stopped him because I heard he was dealing, and at this time he advised me that he was not dealing, that he was just an addict and he had just fixed.

"Q And this occurred in November?

"A Yes."

The testimony concerning the known users of narcotics was timely objected to by the defendant and was admitted only after in-chambers examinations were held out of the presence of the jury.

The defendant contends that by admitting the prejudicial testimony concerning the known narcotics users the defendant was denied a fair and impartial trial. This court has stated:

"In order to convict on the more serious offense of possession of narcotics *for sale,* the prosecution must not only establish the elements required for a conviction for possession, as set forth above but must also show that the possession was for the purpose of sale. Circumstantial evidence may be used to show that the accused possessed the narcotics for sale rather than for his individual use. For example, in People v. Robbins, 225 Cal. App.2d 177, 37 Cal.Rptr. 244 (1964), the court stated that the large amount of heroin involved, plus the fact that it was packaged in eleven separate containers, supported the inference that it was possessed for sale rather than for personal use. Also, in People v. Campuzano, 254 Cal.App.2d 52, 61 Cal.Rptr. 695 (1967), the court stated that the quantity and quality of the heroin and the nature of its packaging and location reasonably supported the inference that it was held for sale." State v. Arce, 107 Ariz. 156, 160, 483 P.2d 1395, 1399 (1971).

■ All the elements necessary to sustain a conviction for the crime of possession of narcotics are clearly present in the instant case. The fact that the defendant, in possession of sixty-nine "papers" of heroin, was being visited by known users of narcotics is certainly a circumstance which the jury could consider, together with other factors, in determining whether heroin was being possessed for sale, as opposed to

mere possession. The evidence was material and was properly admitted. State v. Allen, 9 Ariz.App. 196, 450 P.2d 708 (1969).

## COMMENT UPON THE EVIDENCE

The State requested in writing the following instruction:

"In determining whether the defendant possessed the *heroin* with the specific intent to sell it, you may consider any of the following circumstances as giving rise to a reasonable inference that it was so possessed:

"1) The amount of the substance;

"2) The quantity and quality of the substance;

"3) The manner in which the substance was packaged;

"4) The place where the substance was found;

"5) The opinions of any expert on the subject of illegal activities in narcotics and other drugs."

The court approved this instruction but gave the instruction in slightly modified form as follows:

"Intention, whether the defendant possessed heroin with the specific intent to sell it, you may consider any of the following circumstances that bring about the reasonable inference that it was so possessed.

One: The amount of the substance.

Two: The quantity and quality of the substance.

Three: The manner in which the substance was packaged.

Four: The place where the substance was found.

Five: The opinions of any expert on the subject of either the illegal activities of narcotics and/or address."

Defendant contends that the different wording of the instruction given by the court is a comment on the evidence contrary to the Arizona Constitution. Our Constitution reads:

"Section 27. Judges shall not charge juries with respect to matters of fact, nor comment thereon, but shall declare the law. No cause shall be reversed for technical error in pleadings or proceedings when upon the whole case it shall appear that substantial justice has been done." Arizona Constitution, Art. 6, § 27 A.R.S.

And we have stated in regard to this provision:

" * * * A judge comments on the evidence when he expresses to the jury his opinion of what the evidence shows or does not show. State v. Vann, 11 Ariz. App. 180, 463 P.2d 75 (1970). The inferences derived from the evidence are peculiarly within the jury's province. An invasion of this would constitute error where prejudicial. Gibbs v. State, 48 Ariz. 25, 58 P.2d 1037 (1936). * * *" State v. Godsoe, 107 Ariz. 367, 370, 489 P.2d 4, 7 (1971).

The difference in the two instructions is that in the instruction actually given, the jury was told that the circumstances as set forth do in fact show a "reasonable inference" that the narcotic was possessed for sale, whereas the State's requested instruction indicated that the jury could consider the items listed "as giving rise to a reasonable inference that it was so possessed." The wording of the instruction given was, we believe, an expression by the court of what the evidence showed rather than a direction to the jury that they could infer what it showed, and it was a comment upon the evidence.

While we agree that the instruction given constituted an impermissible comment on the evidence in that the court inferred to the jury the circumstances listed did in fact "bring about a reasonable inference" that the narcotics were possessed for sale, we do not, under the circumstances, believe it was prejudicial. We have stated:

" * * * The test in determining whether error was so prejudicial to the rights of defendant as to require reversal has been stated many times by this

Court: 'Is there a reasonable probability that the verdict might have been different if the error had not been committed?' State v. Dutton, 83 Ariz. 193, 200, 318 P.2d 667, 671 (1957). * * *" State v. Brooks, 103 Ariz. 472, 474, 445 P.2d 831, 833 (1968).

From a reading of the instructions as a whole and a review of the evidence before the jury, we do not believe that there was a "reasonable probability" that the verdict would have been different had the comment on the evidence not been made.

The defendant also contends that the words "and/or address" were prejudicial. We do not agree. While it may have been inartfully stated, we do not believe the jury was misled. The officers had testified that the Patio Hotel was located in the "deuce" area of Phoenix which was, according to his testimony, an area of high narcotics activity and sales. The fact that the defendant was there, where sales normally took place, was a factor the jury could consider in determining whether the possession was for sale.

## FAILURE TO INSTRUCT ON MATERIAL ELEMENT

Defendant next contends that the judge failed to instruct on a material element and that this was fundamental error because, as the brief of the defendant states:

" * * * [t]he court instructed the jury as to the elements of the crime of possession of a narcotic drug for sale * * * but did not instruct that the defendant must have knowledge that the substance possessed was a narcotic. * * *"

We disagree. The instructions state further:

"Now, the elements of the crime of possession of heroin for sale are these:

"One: the person charged must have been in possession of the substance.

"Two: The substance in this case must have been heroin.

"Three: The substance must have been in such quantity and quality as to be acceptable for use as a narcotic.

"Four: The Defendant must have knowledge of the possession of such substance."

Even if this particular instruction had not been given, the rest of the instructions adequately covered this requirement that the defendant had to have the knowledge that he possessed heroin before he could be convicted. We find no error.

Judgment affirmed.

HAYS, C. J., and STRUCKMEYER, LOCKWOOD and HOLOHAN, JJ., concur.