632 So.2d 1080 (1994)
Darrell BRUTTON and Alvin Jones, Appellants,
v.
STATE of Florida, Appellee.
Nos. 92-2636, 92-2803.
District Court of Appeal of Florida, Fourth District.
February 23, 1994.
Richard L. Jorandby, Public Defender, and Tanja Ostapoff, Asst. Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and James J. Carney, Asst. Atty. Gen., West Palm Beach, for appellee.
PARIENTE, Judge.
Darrell Brutton and Alvin Jones were jointly tried and convicted of cocaine trafficking. An error which occurred in the polling of the jury mandates reversal of the defendants' convictions.
The jury returned a guilty verdict against both defendants. The trial court inquired whether the parties wanted the jury polled and the defense requested polling. Each juror in turn indicated the verdict was his or her verdict until the clerk reached juror number five who stated:
JUROR: I don't agree with it, no. I'm sorry. I please, can I just get off this.
THE COURT: No, you can't at this point in time.
The record reflected that this juror was crying when she made these remarks and had been crying since she entered the courtroom. However, the clerk continued to poll the jury, with juror number six indicating his assent to the verdict. In the jury's presence, the court asked the foreman whether the verdict had been unanimous when signed in the jury room. The foreman advised the court that the verdict had been unanimous. As to juror number five, the foreman stated:

*1081 Juror number five did not agree with a guilty verdict and then we all discussed back and forth and we said if you feel that they're not guilty, tell us right now not guilty and either work out to which degree we knew we needed to change, to convert towards her thinking or us, her to our thinking.
The court then re-focused its attention on the dissenting juror in the following exchange:
THE COURT: Ms. Williams, when I received the verdict here it was indicated that this was a unanimous verdict of all the jurors, now you're telling me when I polled the jury that you don't agree with the verdict?
JUROR: I personally said not guilty. But she said to 
THE COURT: Who's she? I'm sorry I don't know your name?
THE JUROR: Barbara said to juror number three, to give reasonable doubt. Is that what it was?
THE COURT: You were there, ma'am. I'm asking you what was said. You were back there so I'm asking you out of your own mouth.
THE JUROR: To give her reasonable doubt and I was speaking as far as Alvin.
THE COURT: Let me ask you this, are these your verdicts?
JUROR: I did agree to guilty because I wanted to get out of here. I might be wrong.
THE COURT: Ma'am, this is a very important case to the State of Florida. It's a very, very important case to the defendant. A lot of time, effort, energy and money goes into the conduct of the trial.
Now, a verdict has to be a unanimous verdict and we ask you is there any reason why you cannot be a juror and you indicated there was no reason why you could not be a juror and there was  you agreed to continue as a prospective juror. You were selected as a juror, you understood what your responsibilities were as a juror.
Now you're saying I'm in a hurry to get out of here.
JUROR: I apologize. I'm not in a hurry to get out of here.
THE COURT: Are you in agreement with the verdict with respect to Mr. Brutton, but are you not in agreement with respect to the verdicts on Mr. Jones, is that what you just said?
JUROR: I don't believe Mr. Jones is guilty, I believe the evidence shows that he is  that they are  I guess I'm not making sense to you, am I Your Honor?
THE COURT: I'm asking you did anyone force you or pressure you or exercise duress upon you to reach this verdict?
JUROR: No. No.
THE COURT: Let me talk with one defendant at a time. This is Mr. Brutton represented by Mr. Wilkov. Do you have any doubt, do you have a reasonable doubt as to his guilt on Count I, trafficking in cocaine?
JUROR: Your Honor, I feel the guilty person is not really here. I feel like they really didn't know what they were going to do. Until they got into the car.
THE COURT: First of all, initially you said you don't agree with the verdicts, then you said a few moments ago that you didn't agree with respect to Mr. Jones, now I'm asking you with respect to Mr. Brutton. Now you're saying both defendants. What are you saying ma'am?
DEFENSE ATTORNEY: Judge, can we go side bar?
THE COURT: No, I need to know. This has been a trial we have been involved in for three days here. The foreman has indicated no duress, no pressure was exercised upon you, you expressed some reservations but ultimately you agreed with the verdict.
And now I'm totally confused as to what your position is and I'm not directing, trying to exert pressure on you, I'm trying to figure out your thoughts about the guilt of the absent defendant, fine and dandy and he may very well be guilty, but we are not concerned about the absent defendant, we are only concerned here with these two defendants.

*1082 Now, I'm not  I can't and will not put words in your mouth or force you to take a position one way or the other, I'm just trying to clarify for the record what your position is.
JUROR: Guilty.
THE COURT: On both defendants? Both charges?
JUROR: Guilty, Your Honor.
THE COURT: On both defendants? Both charges?
JUROR: Yes.
However, subsequently she added:
JUROR: In my heart I felt that they were not guilty, but if with them  in reality they are but  I don't know how to explain it to you.
While the trial court may have been surprised by the juror's dissent, it failed to follow the proper procedure. Once the juror stated during polling that the verdict was not her verdict, the trial court should have returned the jury to the jury room for further deliberations or declared a mistrial based on the lack of a unanimous verdict. Fla. R.Crim.P. 3.450. It was reversible error to continue with the poll, proceed to interrogate the foreman on what occurred in the jury room, and then return to examine the dissenting juror, in front of the other jurors, on her reason for disagreeing with the verdict.
The right to recede from a verdict in open court through jury polling emanates from common law. At common law, the verdict was pronounced in open court and affirmed by the jury being asked to "hearken to their verdict." Grant v. State, 33 Fla. 291, 296, 14 So. 757, 759 (1884). "[A]ny time before the verdict was recorded the prisoner had the right to have the jury polled," and "any member of the jury had the right, sue sponte, to recede from the verdict agreed on at any time before it was recorded" by the court. Id.
Florida Rule of Criminal Procedure 3.450 formalizes the polling procedure by providing:
On the motion of either the state or the defendant or on its own motion, the court shall cause the jurors to be asked severally if the verdict rendered is their verdict. If a juror dissents, the court must direct that the jury be sent back for further consideration. If there is no dissent the verdict shall be entered of record and the jurors discharged.
Few Florida cases have discussed the application of the rule, perhaps because juror repudiation during polling is a rare occurrence. Recently, in Gonzalez v. State, 627 So.2d 63 (Fla. 2d DCA 1993), the court discussed rule 3.450. The juror had announced during polling that she "guessed" the verdict was her verdict and stated "[w]ell [that is what I wanted to do] for one of them." The trial court then continued polling the rest of the jurors despite the ambiguity. The second district noted that the "polling of the rest of the jurors could be perceived as attempted coercion" of the juror, citing United States v. Spitz, 696 F.2d 916 (11th Cir.1983).[1] In reversing the conviction, the court held that the proper procedure for the trial court to follow was either to return the jury for further deliberation or to inquire as to the meaning of the ambiguous statement made by the juror.
Here, the juror's initial statement that she did not agree with the verdict rendered was a repudiation of her verdict. In Cogmon v. State, 338 So.2d 562 (Fla. 1st DCA 1976), the juror announced during polling that the verdict "wouldn't agree with my conscience." Although the juror conceded that she had "independently arrived at the verdict along with the other five members of the jury," she felt that she had no alternative but to follow the decision of the other jurors. Id. at 563. The first district reversed the conviction. It held:

*1083 After stating that the verdict would not agree with her conclusions, she was asked if that was the verdict she reached in the jury room and she said yes, but it is clear that on being polled she repudiated that agreement and thereafter did not disavow the repudiation... . Juror Searcy having dissented from the verdict and there having been no subsequent unanimous verdict, a mistrial should have been declared.
Id. at 563.
In this case, it would not have been necessary at the time of the polling to declare a mistrial. A viable option would have been to send the jury back to deliberate, because a unanimous verdict had not been reached. See Bouie v. State, 540 So.2d 925 (Fla. 3d DCA 1989) (no basis for new trial where a juror stated his disagreement with the verdict during polling, the court returned the jury to deliberate, and thereafter, the jury returned the same verdict.)
The trial court erred, not only in failing to return the jury for further deliberation upon learning of the juror's dissent, but also in the manner of interrogation. Although the trial court may have intended to question the juror in a nonconfrontational way, the juror had already indicated her dissent with the verdict. As the colloquy continued, the juror had difficulty articulating her reasons to the court. Confusion in her responses occurred as the interrogation progressed.[2] While a trial court may on occasion clarify a juror's response during polling which is ambiguous, generally it is "both unwise and undesirable that the court should enter into an argument with the juror or require an explanation of his change in position." United States v. Sexton, 456 F.2d 961, 966 (5th Cir.1972).
The trial court's interrogation of the juror in front of the other jurors, after the foreman had told the court the verdict had been unanimous in the jury room, focused on an explanation of her change in position. The court's questioning created an impression that the juror did not have an absolute right to recede from her vote in the jury room during the polling process. Further, the trial court's comment to the juror in front of the rest of the jury that a "lot of time, effort, energy and money goes into the conduct of the trial" could not help but add to an already intimidating situation for this juror. See Warren v. State, 498 So.2d 472 (Fla. 3d DCA 1986), rev. denied, 503 So.2d 328 (Fla. 1987). The comments made it appear that unless a verdict was reached, considerable time and expense would be sacrificed.
As stated by Judge Glickstein in Nelson v. State, 438 So.2d 1060, 1062-1063 (Fla. 4th DCA 1983), a case concerning an improper Allen charge:
[T]he trial court may have led one or more jurors to capitulate, against his or her conscientious judgment, because the court made it appear that unless a verdict was reached great waste would occur.
See also Dixon v. State, 603 So.2d 86 (Fla. 5th DCA 1992). Here the court's comments were directed to the one juror, rather than to the jury as a whole, thus increasing the pressure.
The unavoidable conclusion is that the court's questioning had a potentially coercive effect on the lone, dissenting juror who had already broken down in tears. We cannot rule out the possibility that the juror felt pressured into reaffirming the guilty verdict with which she did not agree. Even so, her last affirmation remained equivocal. At that point, a mistrial should have been declared. Therefore, we reverse and remand for a new trial.
We reject the other grounds for reversal urged by the defendants.
REVERSED AND REMANDED.
WARNER and KLEIN, JJ., concur.
NOTES
[1] In United States v. Spitz, continuation of the jury poll after lack of unanimity was discovered was held to be per se reversible error as it improperly showed where the jury stood numerically. Contra, United States v. Fiorilla, 850 F.2d 172 (3d Cir.), cert denied, 488 U.S. 966, 109 S.Ct. 492, 102 L.Ed.2d 529 (1988). (trial judge has limited discretion to determine whether the circumstances demonstrate lack of coercion on the initially dissenting member of the jury, rejecting a per se rule of reversal.) We do not favor a per se rule of reversal simply because the trial court polled juror number six after juror number five dissented.
[2] Defense counsel objected to the continued interrogation, noting that "the record can't reflect demeanor. I think it's difficult but she was almost cringing. It's like everything is focused on her."