641 So.2d 942 (1994)
Cang Tan CHUNG, Appellant,
v.
STATE of Florida, Appellee.
No. 92-1191.
District Court of Appeal of Florida, Fifth District.
September 2, 1994.
*943 James B. Gibson, Public Defender and Susan A. Fagan, Asst. Public Defender, Daytona Beach, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Rebecca Roark Wall, Asst. Atty. Gen., Daytona Beach, for appellee.
GOSHORN, Judge.
Cang Tan Chung appeals from his conviction and sentence for aggravated assault with a firearm. After a careful review of the record, we find only one point which merits discussion and reversal.
After deliberation, the jury returned with a verdict finding appellant guilty as charged. The jury was polled and each juror agreed that the verdict read was his or her individual verdict. When juror Rivera responded that the verdict was hers, she did so with noticeable hesitancy. The court then announced, "Mr. Chung, you've been found guilty by a jury of your peers. At this time I am making a finding of guilt for the record on your behalf." Thereafter, the following dialog took place:
THE COURT: Okay, at this time I can thank you for your time and release you from jury duty... . At this time is there anything you'd like to ask before you're released?
JUROR RIVERA: I don't know if I'm allowed to ask this. On the sentencing will he go to jail? Would that be a part of the sentencing? Can we ask that?
THE COURT: I haven't seen the presentence investigation, but there's a possibility... .
MR. STANLEY [Defense Attorney]: Your honor, excuse me, sorry, would it be appropriate for me to make one inquiry? Is this Ms. Rivera? Could I make one inquiry of her since it may be appropriate, since obviously she has hesitated when you polled the jury and asked if it was the verdict of all. Was anything represented or promised for you, to you with regard to a penalty, ma'am, in order for you to vote for a conviction?
MS. CRANFORD [Assistant State Attorney]: I don't believe this is an appropriate question 
THE COURT: I don't either at this time.
MS. CRANFORD:  at this time.
THE COURT: The question is is this her verdict. And I think that's about as far as, as we can go at this point, is this your verdict.
JUROR RIVERA: Can I approach you privately?

*944 THE COURT: I really wouldn't like you to do that. Whatever is said needs to be said in front of the lawyers.
MS. RIVERA: Well, I was not comfortable with the charge to a greater, with the greater charge. But I was kind of led to believe that chances are that he wouldn't go to jail but, for what the charge is. So I wouldn't have agreed to the charge, you know, you have.
THE COURT: Are you saying this is not your verdict?
MS. RIVERA: I'm saying that it is in the sense that I 
THE COURT: Look, the sentencing is not any concern of the jury it is something that I have to decide. And none of us have enough information to say what it is.... All I want to know is whether or not you find the defendant is guilty or not guilty of the charge that the verdict form shows.
JUROR RIVERA: No, ma'am. I'm not.
THE COURT: That's not your verdict?
JUROR RIVERA: (Shakes head).
After Rivera indicated to the court that the verdict was not her verdict, the court asked counsel to approach the bench and, out of the jury's hearing, asked how they felt about an Allen[1] charge. The state attorney responded that she had no objection, and under the circumstances, she thought it was appropriate. The defense attorney, after conferring with his client, objected to sending the jury back with an Allen charge and moved for a mistrial. The court decided to send the jury back for further deliberations, noting, "It doesn't appear you have a verdict of six people."
The court read the jury Florida's modified Allen charge and directed them to deliberate further. The state then agreed to furnish a new verdict form. After forty minutes, the jury sent a note to the court indicating they were unable to reach a verdict. Thereupon, the defense attorney asked the court to declare a mistrial and discharge the jury. At that point, and for the first time, the state attorney objected, arguing that once the court had accepted the first verdict, it was improper to declare a mistrial. The court discharged the jury and set a hearing for the following week for the parties to present additional arguments to the court. After that hearing, the trial court issued an order finding that because the original verdict had been accepted and recorded, all that occurred afterwards was a nullity, and that the jury's guilty verdict would stand. The court further denied the defendant's motion for mistrial or new trial.
It is a well-settled rule that a verdict cannot be subsequently impeached by conduct which inheres in the verdict and relates to the jury's deliberations. Johnson v. State, 593 So.2d 206, 210 (Fla.), cert. denied, ___ U.S. ___, 113 S.Ct. 119, 121 L.Ed.2d 75 (1992); Baptist Hosp. of Miami, Inc. v. Maler, 579 So.2d 97, 99 (Fla. 1991); Mitchell v. State, 527 So.2d 179, 181 (Fla.) cert. denied, 488 U.S. 960, 109 S.Ct. 404, 102 L.Ed.2d 392 (1988). Any testimony that relates to what occurred in the jury room during jury deliberations inheres in the verdict. Johnson, 593 So.2d at 210. However, before reaching the question of whether juror Rivera's statements inhered in the verdict, we must first determine if, in fact, the jury had reached a unanimous verdict.
Florida Rule of Criminal Procedure 3.440 provides that unless disagreement is expressed by one or more of the jurors, the verdict shall be entered of record and the jurors discharged from the cause, but no verdict may be rendered unless all the trial jurors concur in it. Florida Rule of Criminal Procedure 3.450 provides that if a juror dissents, the court must direct that the jury be sent back for further consideration. Here, a juror notified the court before the jury was discharged and while still in the jury box that the verdict announced was not her verdict. Under the unique facts of this case, we find the First District's opinion in Masters v. State, 344 So.2d 616 (Fla. 1st DCA), cert. denied, 352 So.2d 173 (Fla. 1977) to be instructive. In Masters, after the jury had been discharged, an inconsistency in the verdicts *945 was noted. The jury was recalled to the jury box and instructed to retire for further deliberations, after which they returned with a new verdict. The court, in affirming, stated:
We are, of course, familiar with the general rule that once the jury has been discharged it cannot be re-impaneled to hear any matters relating to the same case... . The reason for this rule is that upon discharge the members of the jury lose their separate identity as a jury and can be affected by extra-trial influences. This was the rationale of this court's decision in Smith v. State, 330 So.2d 59 (District Court of Appeal, First District) 1976.
But in this case less than a minute transpired before it was discovered that the jury had in fact as to count one of the information returned two inconsistent verdicts. The jury was immediately recalled and there occurred the sequence of events related herein-above. There is nothing in the record to reflect that the jury had in fact separated and gone their separate ways. On the contrary the fact that they were so readily re-assembled indicates to the contrary. As we stated above there is not evidence that the jury had communicated with any outsider or that any outside influence was exerted upon them, or attempted.
* * * * * *
We hold that under the circumstances as reflected by the record herein the jury, though discharge was spoken by the court, in fact remained an undispersed [sic] unit, within the control of the court. Furthermore, the very case upon which it had been impaneled was still under discussion by the court, without the intervention of any other business, at the time it was recalled for the purpose of clarification of its verdict... .
Id. at 620-21 (citations omitted). See also James v. State, 453 So.2d 786 (Fla. 1984) (approving the reconvening of a jury a week after discharge to poll the jury as to its verdict recommending the death penalty) (citing Masters v. State, 344 So.2d 616 (Fla. 3d DCA), cert. denied, 352 So.2d 173 (Fla. 1977)).
The Third District's decision State v. Thomas, 405 So.2d 220, 221 (Fla. 3d DCA 1981), review denied, 415 So.2d 1361 (Fla. 1982) also assists us in our analysis. In that case, after the jury returned with a guilty verdict, the clerk asked the jury whether the verdict was theirs. It appeared that all members responded simultaneously that it was and no objections were voiced. Following the jury's dismissal, juror Bennett waited outside of the courtroom and expressed to one or more persons that the verdict was not hers. She explained that the foreman had pressured her to accede to the guilty verdict. Thereafter, defense counsel motioned to interview the jurors based on juror Bennett's statements made immediately following the trial. At the hearing, there was conflicting evidence as to whether juror Bennett had, in fact, stated that she acceded to the verdict. Juror Bennett testified that she did not say anything when the clerk ordered all of the jurors to answer during polling. Other jurors testified that they had heard juror Bennett respond "Yes" when asked whether the verdict was hers. The clerk testified that juror Bennett's response was "huh." The clerk further stated that she did not intervene when she heard Bennett's testimony because the clerk did not feel it was her responsibility. In granting the motion for new trial, the lower court explained:
I cannot resolve the matter and I believe for that reason a reasonable doubt exists as to what response, if any, she (juror Bennett) did make and whether she understood she could make a response and in light of those facts, I think that if I'm going to err, I best err on the side of the defendant, and give him a new trial... .
Id. at 221. The Third District affirmed the trial court's decision, reasoning:
When it is abundantly clear that a juror either did not respond to the question or that her response was ambiguous, the matter should be brought to the attention of the trial judge immediately upon the failure of the juror to properly respond... . The failure to bring such to the attention of the trial court at such time should not preclude the trial court, after appropriate inquiry, from granting a new trial when he *946 is in doubt as to the unanimity of the verdict.
Id. at 222 (citations omitted).
Applying Masters and Thomas to the present case, we find that justice demands a new trial. Here, although juror Rivera responded "Yes" when asked whether the verdict was her own, the court and defense counsel noticed that she expressed outright hesitation in her response. At that time, it would have been appropriate for the trial court to inquire further to Rivera regarding the truthfulness of her response. See Gonzalez v. State, 627 So.2d 63 (Fla. 2d DCA 1993) (stating that where a juror was polled and indicated that the verdict was not her verdict for one of the two defendants, the trial court should have sent the jury back for further deliberations). We acknowledge that the trial judge was faced with a unique factual situation which unfolded quickly and required her to make split-second decisions. However, we find that under the circumstances, no verdict was reached and therefore the court's failure to declare a mistrial was error.
In sum, we hold that when a juror, before being discharged and while still in the jury box with the jury assembled, expresses that the verdict announced is not his or her verdict, a verdict has not been reached and the court must either declare a mistrial or instruct the jury to deliberate further in an attempt to reach a verdict. See Fla. R.Crim.P. 3.440 (stating that no verdict may be rendered unless all of the trial jurors concur in it). Although not necessary for our holding in this case, we also find that by agreeing to the Allen charge and to the jury's further deliberation, and also by supplying a new verdict form, the state waived any objection.
REVERSED and REMANDED with instructions to declare a mistrial.
HARRIS, C.J., concurs.
DAUKSCH, J., dissents without opinion.
NOTES
[1] Allen v. United States, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896). The Allen charge has been modified and codified in Florida as Florida Standard Jury Instructions in Criminal Cases 3.06.